UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

679637 ONTARIO LTD.,

    Plaintiff,

v.

Case Number 16-12866
Honorable David M. Lawson

ALPINE SIGN & PRINTER SUPPLY, INC.
and MARABU NORTH AMERICA, L.P.,

    Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND DISMISSING COMPLAINT WITH PREJUDICE

The plaintiff filed a complaint in this Court alleging that an industrial coating sold by the defendants did not hold up. The issues raised in this case are governed by the Sales chapter of the Uniform Commercial Code. Plaintiff 679637 Ontario, Ltd. and its subsidiary make large vinyl advertising banners that are displayed on mobile billboard trucks. The graphics affixed to the banners are protected by a coating applied as a laminate. The coating, which was manufactured by defendant Marabu North America LP and distributed by defendant Alpine Sign & Printer Supply, Inc., did not perform as the plaintiff expected, which generated multiple customer complaints that were expensive to remedy. Plaintiff Ontario filed a complaint alleging warranty and tort claims, and after discovery concluded, both defendants moved for summary judgment. Ontario concedes the tort claims and seeks to proceed on warranty theories. However, because the product label included a valid limitation of remedies, and Ontario did not notify the defendants of the nonconformity of the coating within a reasonable time, it cannot proceed with its claims. The Court will grant the motions for summary judgment and dismiss the complaint.

I.

The basic facts of the case are undisputed. Around August 2010, the plaintiff's subsidiary entity, QuickDraw Tarpaulin Systems, Ltd., was looking for a new clear coat laminating solution to use for coating large vinyl advertising banners that it produced to be used on mobile billboard trucks. QuickDraw needed a new coating product because a product it previously had used, known as Neschen Accu-Coat, had been reformulated by the maker and QuickDraw found that the new formula was not suitable for its use.

QuickDraw eventually settled on a replacement product known as "Clear Shield Star 1020 LL," which defendant Marabu North America, Ltd. manufactured and marketed as a laminating solution for vinyl truck banners. QuickDraw tested the solution in its Neschen branded laminating machine and found that the initial results were good. It began placing orders every few weeks for five-gallon cans of Clear Shield Star 1020 LL from defendant Alpine Sign & Printer Supply, Inc., a distribution partner for defendant Marabu. QuickDraw (and subsequently, plaintiff Ontario) made 54 separate purchases of the Clear Shield Star 1020 LL from Alpine, with its last purchase order on March 20, 2015.

In early 2015, Marabu discontinued the Clear Shield Star 1020 LL product and began selling a replacement known as "Clear Shield for the Star Lam." The plaintiff's final purchase order from March 2015 was for the replacement "Star Lam" product. The plaintiff's subsidiary, QuickDraw, subsequently executed an assignment of rights of all the claims presented in this action to plaintiff Ontario, which apparently is QuickDraw's commercial parent.

The complaint alleges that, "[b]eginning in the fall of 2011, customers of [the plaintiff and its affiliates] began to complain that the printed panels laminated with Clear Shield Star 1020 LL

absorbed dirt and could not be cleaned." Compl. ¶ 13 (Pg ID 5). The plaintiff's project manager, James Martel, confirmed at his deposition that starting in 2011, the company received complaints from customers about banners that became soiled and could not be cleaned. The complaint also alleges that the Clear Shield for the Star Lam product "delaminated almost immediately from truck tarpaulins and [the] plaintiff was forced to purchase a new graphics printer at a cost exceeding $500,000." Compl. ¶ 16.

Marabu's sales manager, Charles A. McGettrick, III, attested that, on September 5, 2014, he received an email from QuickDraw about problems with its laminated truck banners picking up dirt, but Marabu never received any communication from QuickDraw before then about problems with the banners. In its responsive brief, the plaintiff asserts that it did not learn of problems with the Clear Shield Star 1020 LL laminated banners until around May 2014, but the only record evidence that it points to in support of that position is an affidavit by Martel, in which he states:

> Shortly after I started for work at 679637 Ontario Ltd. in May of 2014, any [sic] Quick Draw customers began to complain about dirty and uncleanable laminated tarpaulins. We made several different attempts to clean dirty tarps and assist customers to clean dirty tarps, all of which were unsuccessful, prompting us to contact Marabu in September 2014 to inform them of the problem and ask for their assistance.

Plf.'s Resp. [dkt. #46], Ex. D, James Martel decl. ¶ 4 (Pg ID 633).

McGettrick stated that from 2010 to around September 2015, each can of Clear Shield Star 1020 LL featured a product label with the following limitation of remedies clause:

> **LIMITATION OF REMEDIES AND LIABILITY:** If the product is proved to be defective, the exclusive remedy, at the manufacturer's option, shall be refund of the purchase price or replacement of the defective product. Manufacturer shall not otherwise be liable for loss or damages whether direct, indirect, incidental or consequential, regardless of the legal theory asserted, including negligence and strict liability.

Def.'s Mot. for Summ. J. [dkt. #43], Ex. 8, Charles A. McGettrick, III aff. ¶ 3 (Pg ID 470); Ex. 9, Clear Shield Star 1020 LL Product Label (Pg ID 473) (emphasis in original). In 2015, the defendant added to that clause a disclaimer of implied warranties, which was printed on the label of each can of its Clear Shield for the Star Lam product, reading as follows:

> **LIMITATION OF REMEDIES AND LIABILITY:** If the product is proved to be defective the exclusive remedy, at the manufacturer's option, shall be refund of the purchase price or replacement of the defective product. Manufacturer shall not otherwise be liable for loss or damages whether direct, indirect, incidental or consequential, regardless of the legal theory asserted, including negligence and strict liability. **Manufacturer expressly disclaims all implied warranties, including the implied warranty of merchantability and the implied warranty of fitness for a particular purpose.**

Ex. 10, Clear Shield for the Star Lam Product Label (Pg ID 475) (emphasis in original).

The plaintiff questions whether the disclaimer language appeared on the product labels attached to the five-gallon containers it received. However, the only specific evidence that the plaintiff submitted was Martel's affidavit testimony that he has "not seen the product label and 679637 Ontario Ltd. did not retain [any] empty container[s]." Martel aff. ¶ 2 (Pg ID 632). Martel also attested that when Ontario received its first shipment of the new Clear Shield for the Star Lam product in early 2015, the plaintiff did not "receive a warning or instruction from either Alpine or Marabu to read or inspect the label(s) affixed to the container for information different than that of the labels affixed to the containers of Clear Shield 1020 LL," and that "[n]othing else brought our attention to review any information on the containers of Clear Shield for the Star Lam." *Id.* ¶ 3. But Martel testified at his deposition that, before using the Clear Shield product, someone at Ontario would have "read all the instructions on the bucket," and he believed that someone at Ontario had done so. Martel dep. at 78-79 (Pg ID 419-20).

The plaintiff's complaint in this case raises claims for "defective manufacture" and "defective design" against defendant Marabu North America, L.P. only (Count I); "supplier negligence" against defendant Alpine Sign & Printer Supply, Inc. only (Count II); breach of the implied warranties of merchantability and fitness for ordinary purpose against both defendants (Count III); and unjust enrichment against both defendants (Count IV). Each defendant has filed a motion for summary judgment. The Court heard oral argument on November 3, 2017, but then deferred a decision on the motions at the parties' request until after they attempted to resolve their dispute through mediation. They recently notified the Court that their settlement attempts were not successful.

II.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under Rule 56, the party bringing the summary judgment motion has the initial burden of informing the court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). If the party opposing the motion contends facts are in dispute, she may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). Nor may she "simply show that there is some 'metaphysical doubt as to the material facts.'" *Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)) (internal quotation marks omitted).

Instead, the opposing party must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Those facts must be "established by evidence that will be admissible at trial." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (citing Fed. R. Civ. P. 56(e)(2)) If the non-moving party, after sufficient opportunity for discovery, is unable to meet his or her burden of proof, summary judgment is clearly proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "Thus, the mere existence of a scintilla of evidence in support of the [opposing party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." 350 F.3d at 546 (quoting 477 U.S. at 252) (quotations omitted).

Michigan law governs the parties' dispute. Because this is a diversity action, the Court must follow Michigan substantive law, as prescribed by the state's highest court. *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). If the Michigan Supreme Court has not addressed a determinative point of law, this Court "must predict how it would resolve the issue from 'all relevant data.'" *Kingsley Associates, Inc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 507 (6th Cir. 1995) (citing *Bailey v. V. & O Press Co., Inc.*, 770 F.2d 601, 604 (6th Cir. 1985)). "Relevant data include decisions of the state appellate courts, and those decisions should not be disregarded unless we are presented with persuasive data that the Michigan Supreme Court would decide otherwise." *Ibid.* (citing *FL Aerospace v. Aetna Casualty and Surety Co.*, 897 F.2d 214, 218-19 (6th Cir. 1990)).

The defendants have challenged all the counts brought against them respectively. In its motion responses, the plaintiff concedes all of the tort counts in the complaint should be dismissed because its claims against the defendants properly arise under Article 2 of the U.C.C (Sales).

Similarly, the plaintiff concedes in its response to defendant Marabu's motion that discovery has revealed that Count I alleging "defective manufacture" and "defective design" cannot be sustained and should be dismissed. That leaves the respective warranty claims for adjudication.

A.

In its motion, defendant Alpine argues that it cannot be held liable for breach of an express warranty because it made no express representations to the plaintiff or anyone else about the Clear Seal product; and Alpine cannot be held liable for breach of an implied warranty of fitness for purpose because as a matter of law it cannot be regarded as a "merchant" for products of the sort at issue. The plaintiff acknowledges that it has no viable express warranty claim against Alpine. But it contends that its claim for breach of implied warranty is viable because Alpine fits the definition of a "merchant" with respect to sign laminating products under Section 2-2104(1) of the U.C.C., since it regularly sold laminating compounds to the plaintiff in a series of 54 periodic purchases over the course of four years, and it is an established "distribution partner" of defendant Marabu.

Michigan's version of Article 2 of the U.C.C, Mich. Comp. Laws §§ 440.2101-.2725, "governs the relationship between parties involved in contracts for the sale of goods." *Grosse Pointe Law Firm, PC v. Jaguar Land Rover North America, LLC*, 317 Mich. App. 395, 400, 894 N.W.2d 700, 703 (2016) (citing Mich. Comp. Laws § 440.2102). "Article 2 . . . defines a wide range of implied warranties that arise by operation of law." *Id.* at 405, 894 N.W.2d at 705. "[T]he implied warranty of merchantability . . . provides that goods [must, among other things,] 'pass without objection in the trade under the contract description,' [and be of] 'fair quality within the description' [and] 'fit for the ordinary purpose for which the goods are used.'" *Id.* at 406 n.7, 894 N.W.2d at 706 n.7 (quoting Mich. Comp. Laws § 440.2314). "In general, a warranty of

merchantability is implied when the seller is a merchant of the goods sold and provides that the goods will be of average quality within the industry." *Gorman v. American Honda Motor Co.*, 302 Mich. App. 113, 121, 839 N.W.2d 223, 228 (2013) (citing Mich. Comp. Laws § 440.2314).

Michigan's U.C.C. Section 2-104 defines a "merchant" as

"a person that deals in goods of the kind or otherwise by the person's occupation [that] holds itself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to which that knowledge or skill may be attributed by the person's employment of an agent or broker or other intermediary who by the person's occupation holds itself out as having that knowledge or skill."

Mich. Comp. Laws § 440.2104(1). "In general, '[t]he question whether a [party] may be a merchant as that term is used in the U.C.C. is a question of law for the courts to decide by applying the U.C.C. definition of merchant to the facts in the case.'" *Bev Smith, Inc. v. Atwell*, 301 Mich. App. 670, 681, 836 N.W.2d 872, 879 (2013) (quoting *Milwaukee County v. Northrop Data Systems, Inc.*, 602 F.2d 767, 771 (7th Cir. 1979)).

Defendant Alpine argues that it is not a "merchant" with respect to the coating products involved here and did not hold itself out as having any expertise in the coating of vinyl truck banners. However, it appears to be undisputed that Alpine sold more than 600 gallons of Clear Shield product to the plaintiff on 54 purchase orders over the course of four years. *See* Plf.'s Resp. [dkt. #45], Ex. A, Purchase Orders dated Aug. 17, 2010 through Mar. 20, 2015. That certainly is sufficient evidence for a factfinder to conclude that Alpine "deals in goods of the kind," Mich. Comp. Laws § 440.2104(1), regardless of whether Alpine held itself out as having any special knowledge about truck banner coating solutions. The plaintiff wins that argument.

But Ontario's claim against Alpine suffers from a fatal flaw revealed by the record, which has its roots in U.C.C. section 2-607(3). Michigan's version of that section states: "Where a tender

has been accepted . . . the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Mich. Comp. Laws § 440.2607(3)(a). It is undisputed that the plaintiff never gave any notice to Alpine about problems with the clear coat product until this lawsuit was filed, and it certainly did not give any such notice "within a reasonable time" after it became aware of problems with the clear coated banners picking up dirt. Martel dep. at 102 ("Q: Did you ever tell [Alpine] there were problems with the product that needed to have issues addressed until the lawsuit was filed? A: No, I don't believe so.").

Although Alpine did not argue that issue, co-defendant Marabu raised it and the question was fully briefed by the parties. Once the non-moving party has notice and an opportunity to respond, "the court may . . . grant the [summary judgment] motion on grounds not raised by a party. Fed. R. Civ. P. 56(f)(2); *see also Bailey v. City of Howell*, 643 F. App'x 589, 600 (6th Cir. 2016) ("[A] district court may enter summary judgment *sua sponte* if the losing party is 'afforded notice and reasonable opportunity to respond to all the issues to be considered by the court.'") (quoting *Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 931 (6th Cir. 2000)). Ontario cannot recover against Alpine, the coating distributor, without giving prior notice of the product defect within a reasonable time, and certainly if no notice is given at all.

Moreover, Ontario must overcome the limitation-of-remedies defense, discussed more fully below, which is another insurmountable obstacle to its recovery against Alpine. *See Heritage Resources, Inc. v. Caterpillar Financial Services Corp.*, 284 Mich. App. 617, 641, 774 N.W.2d 332, 345 (2009) ("[A] remote purchaser is subject to the manufacturer's disclaimer of implied warranties

in the same manner as is the original purchaser, and can acquire no greater implied-warranty rights from the manufacturer than the original purchaser can.").

Alpine's motion for summary judgment will be granted.

B.

Defendant Marabu North America argues that (1) the implied warranty claim for the "Star Lam" product is defeated because the defendant disclaimed all implied warranties in a conspicuously printed label on each can of that product sold to the plaintiff; (2) a buyer that receives a defective product must give timely notice of the defect to the seller, but the plaintiff never notified the defendant of the defect before September 5, 2014, which is well after the time when it first was aware of the defect; (3) all of the cans of clear coat solution also included a conspicuous and valid limitation of remedies excluding recovery for incidental or consequential damages, and the plaintiff therefore is limited to recovering no more than the refund or replacement value of product it received since August 2012; and (4) to the extent that the plaintiff seeks to recover for the cost of replacing its customers' truck banners after the expiration of the one-year warranty which the plaintiff offers on those banners, any such replacements were outside "the ordinary course" of its business and therefore are not properly regarded as consequential damages in a warranty action.

Marabu also argues that the applicable statute of limitations for warranty claims is four years, and the plaintiff filed its complaint on August 4, 2016, so it cannot recover for any allegedly defective product received before August 4, 2012. Ontario concedes this last point, agreeing that its recovery should extend only to claims for product it received after August 4, 2012. However, it disputes Marabu's other contentions, insisting that (1) the warranty disclaimer on the product label exhibited by the defendant in its motion is not conspicuous, no such label was affixed to cans of a

-10-

previous formulation of the Clear Shield product sold to the plaintiff over the course of four years, and the disclaimer only appeared on several cans of the new "Clear Shield for the Star Lam" product shipped to the plaintiff in March 2015, which were not accompanied by any "notice" or "directions" advising the plaintiff to consult the package labeling for new warranty terms; (2) the plaintiff gave notice within a reasonable time because it only became aware of problems with its truck banners becoming soiled around May 2014, and it notified the defendant in September 2014, after investigating its customers' complaints and making its own unsuccessful attempts to clean the banners; (3) there was no contract between the plaintiff and Marabu, so there could not be any valid agreement between them to limit the plaintiff's recovery to a refund or replacement of the defective clear coat solution; and (4) the plaintiff's costs for replacing its customers' banners are properly recoverable as consequential damages for the breach of warranty, because it was foreseeable that the defective solution would cause customers to demand that banners be replaced, and the plaintiff was compelled to replace the soiled banners regardless of the expiration of its one-year warranty term, to preserve good will with its customers.

1.

Under Michigan's adoption of the U.C.C., implied warranties of merchantability and fitness for a particular purpose arise by operation of law. *See* Mich. Comp. Laws §§ 440.2314; 440.2315. However, both of those implied warranties "may be excluded or disclaimed by the seller." *Heritage Resources*, 284 Mich. App. at 640, 774 N.W.2d at 345 (citing Mich Comp. Laws § 440.2316). The disclaimer must be made "by specific language" that " includes the word 'merchantability' and . . . is conspicuous." *Krupp PM Engineering, Inc. v. Honeywell, Inc.*, 209 Mich. App. 104, 107 n.1, 530

N.W.2d 146, 148 n.1 (1995) (citing former Mich. Comp. Laws § 440.1201(10), presently codified as Mich. Comp. Laws § 440.1201(j)).

Whether a clause is "conspicuous" is a question of law for the Court. *Id.* at 107, 530 N.W.2d at 148. "'Conspicuous,' with reference to a term, means so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it." Mich. Comp. Laws § 440.1201(j). "Conspicuous terms include any of the following: (i) A heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to surrounding text of the same or lesser size. (ii) Language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language." *Ibid.*

Where the pertinent text is obfuscated and does not stand out, it may be found not to be conspicuous, even though legibly printed on some part of a sales form or product package. *See Krupp*, 209 Mich. App. at 108, 530 N.W.2d at 149 (holding that the limitation clause "[i]n no event will the company be liable for indirect, special or consequential damages of any nature whatsoever" was not conspicuous where (1) the text was printed on the back of an invoice form; (2) it was not capitalized, in contrast with surrounding warranty-related text; and (3) the only allusion to a warranty on the face of the invoice was "small italicized print at the bottom of the front of the invoice" stating that "'Standard Terms and Conditions on the reverse side are a part hereof.'").

Ontario relies on *Mallory v. Conida Warehouses, Inc.*, 134 Mich. App. 28, 350 N.W.2d 825 (1984), to support its argument that the disclaimer was not conspicuous. In that case, the disclaimer mentioned "merchantability" and appeared in capital letters. But it was printed on a seed bag tag

that "was attached with two other tags to the bottom of the bag and was not in a 'particularly conspicuous location,' given that it was under two other tags." *Id.* at 31, 350 N.W.2d at 827. The undisputed record before this Court, however, compels the conclusion that all of the plaintiff's claims for breach of an implied warranty of merchantability and fitness for purpose as to the "Clear Shield for the Star Lam" product are barred because a conspicuous and valid waiver of all implied warranties was included on the product label for each can of that product shipped to the plaintiff starting around March 2015.

The product label for each can of the Star Lam product included, at a minimum, language in the body of the product label that was in contrasting type or font (bold face) compared with the surrounding text, which clearly referred to and disclaimed all implied warranties, including for merchantability and fitness for purpose. It also was displayed on the face of each tub of coating, unobscured by any other label or tags. On similar facts, courts readily have held that a product label disclaimer was effective to quash all implied warranty claims by a commercial customer accustomed to dealing in large quantities of goods bearing the same sort of product label. *See NuTech Seed, LLC v. Roup*, 212 F. Supp. 3d 783, 793-94 (S.D. Iowa 2015) (finding a disclaimer effective where it "mention[ed] merchantability [and] contain[ed] a heading in capital letters in bold type, which contrasts with the surrounding text"; and where "[e]ach package of NuTech seed received by the Defendant in or for 2013 contained the terms and conditions of sale . . .") (quotations and citations omitted); *see also Hackel v. National Feeds, Inc.*, 986 F. Supp. 2d 963, 977 (W.D. Wis. 2013) ("There is no dispute that the disclaimer [printed on each product label] here meets each of the requirements for an effective disclaimer. It was (1) in writing, (2) conspicuous, and (3) clearly stated that implied warranties of merchantability or fitness were disclaimed.").

The plaintiff does not dispute that the products it received bore the label disclaimer in question, and its project manager James Martel testified that someone at Ontario would have read the product label before using it, and that he believed someone there had done so. The plaintiff cannot plausibly maintain now that it lacked notice of the bold-faced warranty disclaimer plainly printed on the "Star Lam" product label, regardless of whether Marabu ever called the plaintiff's attention to the new language on the label compared with the predecessor formula.

The warranty disclaimer is effective. Ontario's claims for breach of implied warranties on product shipped after March 2015 — when the disclaimer language was added to the label — must be dismissed.

2.

As to all of the claims for breach of implied warranties based on the tendency of the Clear Shield coated banners to attract and retain dirt, the plaintiff's claims against both of the defendants are barred for another reason as well: there are no facts in the record to suggest that the plaintiff gave notice to either defendant "within a reasonable time" after discovering the problem with banners becoming irreparably soiled.

As noted earlier, Michigan's U.C.C. Section 2-607(3) states: "'Where a tender has been accepted . . . the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.'" *Gorman v. American Honda Motor Co.*, 302 Mich. App. 113, 123, 839 N.W.2d 223, 229-30 (2013) (quoting Mich. Comp. Laws § 440.2607(3)(a)). This means that "the seller must be given actual notice that the buyer believes that the seller is in breach." *Id.* at 126, 839 N.W.2d at 231.

"Whether proper notice was given is a question of fact." *Standard All. Indus., Inc. v. Black Clawson Co.*, 587 F.2d 813, 823 (6th Cir. 1978). But "[i]f reasonable minds could not differ, . . . the question of what constitutes a reasonable time should be decided on summary [judgment] as a matter of law." *Bev Smith, Inc. v. Atwell*, 301 Mich. App. 670, 682, 836 N.W.2d 872, 879 (2013).

It is undisputed that Ontario's subsidiary, QuickDraw, did not give notice of the dirt retention on its tarps until September 5, 2014, when it sent an email to Maribu's sales manager, Charles McGettrick. As to defendant Alpine, the plaintiff concedes that it never gave any notice of the alleged defects before it filed this lawsuit in August 2016, more than two years after the plaintiff contends that it first became aware of the dirt-shedding problems. The plaintiff has not pointed to any information in the record to sustain its assertion that it was not aware of problems with dirty banners until May 2014; the only testimony it has submitted was by Martel, who asserted merely that he became aware of complaints by customers when he began working for the plaintiff around that time. But Martel affirmed at his deposition, as the plaintiff positively alleged in its complaint, that the first dirty banner complaints were received by it some time in 2011. The plaintiff has made no attempt to explain how notice given in September 2014 or August 2016 was remotely "within a reasonable time" after knowledge of the alleged defect was acquired in 2011.

"The purposes of the UCC's notice requirement are (1) to prevent surprise and allow the seller the opportunity to make recommendations how to cure the nonconformance, (2) to allow the seller the fair opportunity to investigate and prepare for litigation, (3) to open the way for settlement of claims through negotiation, and (4) to protect the seller from stale claims and provide certainty in contractual arrangements." *American Bumper & Mfg. Co. v. Transtechnology Corp.*, 252 Mich. App. 340, 346-47, 652 N.W.2d 252, 256 (2002). A delay of nearly three years in giving notice of

a product defect frustrates each of these purposes. That delay is not "reasonable" within the meaning of U.C.C. section 2-607(3)(a). Reasonable minds would not differ on that point.

3.

Both defendants make mention in their briefs of express warranty claims, and the plaintiff likewise refers to such claims in passing in its response brief. But the plaintiff never pleaded any such claim in its complaint, and it has offered no factual basis to sustain any such claim even if one had been pleaded. *See Hackel v. National Feeds, Inc.*, 986 F. Supp. 2d 963, 977 (W.D. Wis. 2013) ("As National points out in its reply brief, there is another problem with plaintiff's shifting to an express warranty claim. While plaintiff alleged implied warranty claims, it appears from his opposition brief that plaintiff is now attempting to assert an express warranty claim. The problem is that plaintiff has never pled such a claim.").

Under Michigan law, an express warranty may be created where the seller offers to the buyer any of the following: "(a) An affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise. (b) A description of the goods which is made part of the bargain creates an express warranty that the goods shall conform to the description. (c) A sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model." *Grosse Pointe Law Firm*, 317 Mich. App. at 403-04, 894 N.W.2d at 705. As the *Grosse Point* court observed, a mere promise to repair or replace a defective product does not, in itself, comprise an express warranty:

> Goods cannot "conform" to a promise to repair or replace because such a promise says nothing about the character or quality of the goods, but rather identifies a remedy if the buyer determines that the goods are defective. Put another way, an unadorned promise to repair or replace a defective part is not a promise concerning

the quality or performance of the goods to which the goods can "conform." A promise to repair or replace instead provides nothing more than a remedy for a product that breaks. Accordingly, we cannot agree that the repair-or-replace provision in this case is an express warranty under Mich. Comp. Laws § 440.2313(1)(a).

317 Mich. App. at 404, 894 N.W.2d at 705.

The plaintiff has not pointed to any evidence in the record to suggest that either of the defendants made any express representation to it about the performance of the product or its longevity as a coating for truck banners. At most, the plaintiff alludes to representations by Marabu that the product was "compatible" with its banner printing machine. But it has not pointed to any statements by Marabu or Alpine about whether the product can be used or for how long to prevent dirt from sticking to banners. And the product label representation that a "defective" product will be refunded or replaced is not, in itself, sufficient to create an express warranty. *Id.* at 404, 894 N.W.2d at 705.

Moreover, the plaintiff apparently does not seek to press any express warranty claim against Alpine, and it concedes in its response that it never had any contractual relationship with Marabu, which is a prerequisite for the existence of any express warranty obligation. "An express warranty may be created only between a seller and a buyer, and any such express warranty becomes a term of the contract itself." *Heritage Resources*, 284 Mich. App. at 634, 774 N.W.2d at 341-42 (quoting UCC § 2-313, cmt. 2 ("'[T]his section is limited in its scope and direct purpose to warranties made by the seller to the buyer as part of a contract for sale.'")). The Michigan Supreme Court "has long implicitly recognized that an express warranty is no different than any other term of the contract." *Id.* at 634, 774 N.W.2d at 342. Michigan's U.C.C. Section 2-313, Mich. Comp. Laws § 440.2313, "clearly provides that express warranties are limited to statements, descriptions, representations,

samples, and models that are 'made part of the basis of the bargain,'" and "this statutory language [compels the conclusion] that where there is no contract, and therefore no " bargain," there can be no express warranty under [section 2313]." *Id.* at 635, 774 N.W.2d at 342.

III.

The plaintiff has agreed that its claims for "defective manufacture" or "defective design", "supplier negligence", and "unjust enrichment" cannot be sustained, and Counts I, II, and IV of the complaint should be dismissed. The defendants are entitled to a judgment in their favor as a matter of law on the warranty claims.

Accordingly, it is **ORDERED** that defendants' motions for summary judgment [dkt. #42, 43] are **GRANTED**.

It is further **ORDERED** that the complaint is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that the motions *in limine* [dkt. #54, 55] are **DISMISSED as moot**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: January 3, 2018

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 3, 2018.

s/Susan Pinkowski
SUSAN PINKOWSKI